UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GULF COAST TURF AND
TRACTOR LLC,

    Plaintiff,

v.               Case No.  8:17-cv-2787-T-24 AEP

KUBOTA TRACTOR CORPORATION,

    Defendant.
_____/

## **ORDER**

   This cause comes before the Court on Defendant's Motion for Partial Summary

Judgment.  (Doc. No. 51).  Plaintiff opposes the motion.  (Doc. No. 57).  As explained below, the

motion is, in large part, denied.[1]

## **I.  Standard of Review**

   Summary judgment is appropriate "if the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a). The Court must draw all inferences from the evidence in the light most favorable to the

non-movant and resolve all reasonable doubts in that party's favor.  See Porter v. Ray, 461 F.3d

1315, 1320 (11th Cir. 2006)(citation omitted).  The moving party bears the initial burden of

showing the Court, by reference to materials on file, that there are no genuine issues of material

fact that should be decided at trial.  See id. (citation omitted).  When a moving party has

discharged its burden, the non-moving party must then go beyond the pleadings, and by its own

---

[1]Defendant also filed a motion to file a reply brief.  (Doc. No. 62).  Plaintiff opposed that
motion. (Doc. No. 63).  The Court finds that a reply brief is unnecessary and denies Defendant's
motion to file a reply brief without further comment.

affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. See id. (citation omitted).

## II. Background

Defendant Kubota Tractor Corporation ("Kubota") distributes agricultural, construction, and outdoor power equipment through a network of dealers throughout the United States. Plaintiff Gulf Coast Turf and Tractor LLC ("Gulf Coast") is one of Kubota's authorized dealers, with dealerships in Pasco County and Hillsborough County.

Typically, dealers such as Gulf Coast make sales to private customers within the geographic areas of their stores. For these types of sales, the dealer earns a commission for the sale and also has the warranty and servicing obligations for the equipment sold. Likewise, for these sales, the dealer is both the Selling Dealer and the Delivering Dealer.

However, large, national customers purchase their equipment directly from Kubota's corporate headquarters. Hertz Equipment Rental Corporation ("Herc") and Neff Rentals, Inc. ("Neff") are two large, national customers. For sales to national customers, there is no Selling Dealer because the national customer orders directly from Kubota. However, Kubota designates a Delivering Dealer for each sale to a national customer, and the Delivering Dealer would get a commission from that sale.

In 2017, Kubota issued a Sales Bulletin that stated that Kubota retained the right to designate the Delivering Dealer when a sale was made under its National Account Purchase Agreement Program.[2] (Doc. No. 51-1). Kubota contends that it selected the Delivering Dealer

_____

[2]Pursuant to section 19(i) of the Dealer Sales and Service Agreement ("DSSA") between Kubota and Gulf Coast, Kubota's sales bulletins were incorporated into the DSSA. (Doc. No. 57-1, p. 26–27 of 60).

based on which dealer was geographically the closest to the delivery address, unless the national customer specified that it wanted a specific dealer to be the Delivering Dealer. This is a disputed issue of fact, as there is evidence that Kubota designated Florida Coast Equipment ("FCE") as the Delivering Dealer for all sales made in Florida to Neff without Neff's prior request to make FCE its Delivering Dealer. (Doc. No. 57-9, depo. p. 77, 87–90; Doc. No. 51-3).

Gulf Coast wanted to be the Delivering Dealer for all sales to Herc in the state of Florida. As one way to entice Herc to tell Kubota that Herc wanted Gulf Coast to be its Delivering Dealer for all Florida sales, in March of 2017, Gulf Coast offered to help Herc obtain the software needed to diagnose problems with their Kubota equipment. The software belonged to Kubota, and Gulf Coast could not share the software without Kubota's permission. (Doc. No. 57-1, p. 17 of 60). There is a disputed issue of material fact regarding whether Gulf Coast sought and received permission from Kubota before offering the software to Herc as an enticement. (Doc. No. 57-6, depo. p. 176–77; Doc. No. 57-7, depo. p. 32–33; Doc. No. 57-8).

After Gulf Coast offered the diagnostic software to Herc, Kubota contends that Herc got upset and did not want to designate Gulf Coast, or any other specific dealer, as its Delivering Dealer. The evidence on this issue consists of hearsay—there is an email chain from Herc (Doc. No. 51-2), as well as testimony by Kubota employees regarding what Herc allegedly told them. There is no direct, non-hearsay evidence from Herc on this issue. Conversely, Gulf Coast argues that Kubota unfairly interfered with its attempt to cultivate a Delivering Dealer relationship with Herc.

Based on the above, Gulf Coast contends that Kubota acted unfairly in two ways. First, Gulf Coast contends that Kubota unfairly interfered with Gulf Coast's attempts to build

relationships with certain national customers, including Herc.  Second, Gulf Coast contends that

Kubota acted unfairly towards Gulf Coast in the designation of the Delivering Dealer for Herc

and Neff.  As a result, Gulf Coast asserts four claims against Kubota: (1) violation of Florida

Statute § 686.413; (2) violation of Florida Statute § 686.611; (3) violation of Florida's Unfair and

Deceptive Trade Practices Act (Florida Statute § 501.204); and (4) tortious interference with

advantageous business relationships.

### III.  Motion for Summary Judgment

Kubota's motion for summary judgment only pertains to Gulf Coast's claims as they

relate to Herc, and Kubota makes various arguments as to why it should be granted summary

judgment as to these claims.  Gulf Coast responds that genuine issues of material fact preclude

summary judgment.  As explained below, the Court largely agrees with Gulf Coast that genuine

issues of material fact exist that preclude summary judgment as to these claims.

#### A.  Florida Statutes § 686.413,  § 686.611, and § 501.204

Gulf Coast contends that Kubota violated Florida Statute § 686.413 (which applies to

agricultural equipment) and § 686.611 (which applies to outdoor power equipment), both of

which declare that unfair methods of competition and unfair or deceptive acts or practices in the

conduct of the distribution of such equipment are unlawful.  Both statutes also provide that it is a

violation for a distributor "to engage in any action which is arbitrary, capricious, in bad faith, or

unconscionable and which causes damage . . . to any of the parties or to the public."  Fla. Stat. §

686.611(1); Fla. Stat. § 686.413(1).  Additionally, Florida Statute  § 686.611(3)(f) provides that

it is a violation for a distributor "[t]o willfully discriminate, either directly or indirectly, in . . .

programs . . . offered to dealers, when the effect of such discrimination may be . . . to give to one

[dealer] any economic, business, or competitive advantage not offered to all [dealers]."[3]

Gulf Coast also contends that Kubota violated Florida's Unfair and Deceptive Trade Practices Act ("FDUTPA"), Florida Statute § 501.204, which states that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are . . . unlawful." Fla. Stat. § 501.204(1). Gulf Coast contends that Kubota's alleged violations of Florida Statutes § 686.413 and § 686.611 are per se violations of FDUTPA.[4]

Gulf Coast contends that Kubota acted unfairly by preventing it from becoming a Delivering Dealer to Herc for all of its Florida purchases. It appears that Gulf Coast is arguing that it did not matter whether Herc wanted Gulf Coast to be its Delivering Dealer, Kubota would not allow Gulf Coast to be the Delivering Dealer for all of Herc's Florida purchases. (Doc. No. 57-6, depo. p. 179–82). It also appears that Gulf Coast contends that since Kubota allowed FCE to be the Delivering Dealer for Neff throughout the state of Florida, it was unfair of Kubota to not allow the same for Gulf Coast with respect to sales to Herc in Florida. Based upon the record before the Court, Kubota has not shown that there is no genuine issue of material fact as to these claims.

Kubota makes three arguments as to the statutory claims that require further analysis. First, Kubota argues that the statutory violations of § 686.413 and § 686.611 cannot be used as per se violations of FDUTPA, because those statutory violations occurred in March 2017, prior

_____

[3]Gulf Coast contends that Kubota discriminated in the selection of Delivering Dealers for purchases made pursuant to the National Account Purchase Agreement Program.

[4]Florida Statute § 501.203(3)(c) states that one violates FDUTPA by violating any statute that proscribes unfair acts or practices.

to FDUTPA's trigger date of July 1, 2017.  Fla. Stat. § 501.203(3) (providing that the statute

applies to other statutory violations that occur after July 1, 2017).  However, an identical version

of FDUTPA existed that applies to conduct occurring after July 1, 2015.  Thus, the prior version

of FDUTPA applies to the March 2017 conduct.

Second, Kubota argues that Gulf Coast has not identified an unfair practice, because

Kubota had the right to assign the Delivering Dealer for national customers.  However, while

Kubota may have the right to assign the Delivering Dealer for national customers, a FDUTPA

claim may exist if Kubota did so unfairly.  See, e.g., Factory Direct Tires, Inc. v. Cooper Tire &

Rubber Co., 2011 WL 13117118, at *7 (N.D. Fla. Oct. 24, 2011)(rejecting the defendant's

argument that because the contract allowed the defendant to change its prices at any time, the

plaintiff could not state a FDUTPA claim for doing so unfairly and deceptively).

"A practice will be deemed 'unfair' when it offends established public policy and when

the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to

consumers, (or competitors or other businessmen)."  MJS Music Publications, LLC v. Hal

Leonard Corp, 2006 WL 1208015, at *2 (M.D. Fla. May 4, 2006)(internal quotation marks and

citation omitted).  Whether certain conduct constitutes an unfair practice is a question of fact.

See Siever v. BWGaskets, Inc., 669 F. Supp.2d 1286, 1293 (M.D. Fla. 2009); Nature's Products,

Inc. v. Natrol, Inc., 990 F. Supp.2d 1307, 1322 (S.D. Fla. 2013).  Accordingly, the jury will

decide whether Kubota violated FDUTPA.

Third, Kubota argues that even if the FDUTPA claim can proceed, Gulf Coast cannot

recover any anticipated future lost profits related to Herc, because those type of damages are not

available under FDUTPA.  The Court agrees and grants Kubota summary judgment on this

issue.[5]  See Factory Direct Tires, 2011 WL 13117118, at *7 (finding that past lost profits are recoverable under FDUTPA, but future lost profits are not); Global Tech Led, LLC v. Hilumz International Corp., 2017 WL 588669, at *9 (M.D. Fla. Feb. 14, 2017)(finding that past lost profits are recoverable under FDUTPA, but future lost profits are not).

**B.  Tortious Interference**

Next, Gulf Coast contends that Kubota tortiously interfered with certain advantageous business relationships, including Gulf Coast's relationship with Herc.  The Florida Supreme Court has explained this claim as follows:

> The elements of tortious interference with a business relationship are (1) the existence of a business relationship . . . (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship.  A protected business relationship need not be evidenced by an enforceable contract.  However, the alleged business relationship must afford the plaintiff existing or prospective legal or contractual rights.

Ethan Allen, Inc. v. Georgetown Manor, Inc., 647 So.2d 812, 814 (Fla. 1994)(internal quotation marks and citations omitted).  Gulf Coast has offered evidence that it was cultivating a Delivering Dealer relationship with Herc, and after finding out about Gulf Coast's efforts, Kubota decided that it would not select Gulf Coast to be Herc's Delivering Dealer for its Florida

---

[5]The Court notes that Kubota may be arguing that even *past* lost profits are not available under FDUTPA given the fact that there was not a Delivering Dealer relationship in place with respect to Gulf Coast and Herc for the entire state of Florida.  The Court does not have enough information to determine whether such past lost profits would be too speculative to measure.  While the past sales to Herc within Florida have already been made, it is unclear whether there is one set commission rate for all Delivering Dealers that are selected for Herc purchases in Florida.  If Kubota is arguing that even past lost profits are not available under FDUTPA, Kubota may raise this issue again in a short, supplemental motion for summary judgment that addresses only this discrete issue.

purchases, which resulted in less commissions for Gulf Coast.

Kubota argues that this claim fails because Kubota is a party to the relationship with Herc. Kubota's involvement (as the seller of equipment to Herc) provides the basis for the business opportunity that Gulf Coast was pursuing with Herc (*i.e.,* becoming the Delivering Dealer for Herc's Florida purchases). There is case law that supports the general contention that a tortious interference claim cannot succeed when the one interfering is a party to the relationship being interfered with. See Cox v. CSX International, Inc., 732 So. 2d 1092, 1099 (Fla. 1st DCA 1999); Romika-USA, Inc. v. HSBC Bank USA, N.A., 514 F. Supp.2d 1334, 1338 (S.D. Fla. 2007); Burger King Corp. v. Ashland Equities, Inc., 161 F. Supp.2d 1331, 1336 (S.D. Fla. 2001). However, as explained by one court, that general rule relates to the element of a tortious interference claim that the plaintiff must prove an *intentional and unjustified* interference with the relationship by the defendant:

> In general it is true, under Florida law, that "a cause of action for tortious interference cannot exist against one who is himself a party to the contract." Unlike third party interference, the law protects parties who are in privity of contract from exposure to liability for actions based upon theories of tortious interference with contractual relations by granting them a "privilege to interfere." However, . . . the extent of this privilege is limited and does not afford an absolute bar to liability. In fact, Florida courts have recognized that the privilege to interfere is a valid defense to a claim for tortious interference only where the interference was not done for some improper purpose. The right to interfere in contractual relations, as granted to interested parties, is qualified by the obligation to proceed in good faith. This good faith requirement, common to all facets of contract law, disqualifies litigants from asserting the privilege when they have acted with malicious or conspiratorial motives.

Burger King, 161 F. Supp.2d at 1336 (citations omitted). Furthermore, "even when the defendant's motive is not purely malicious, a tortious interference claim may succeed if improper

methods were used." KMS Restaurant Corp. v. Wendy's International, Inc., 361 F.3d 1321, 1327 (11th Cir. 2004).[6]  Whether a party to the relationship has gone beyond its limited privilege to interfere is generally a jury question.  See id. at 1325–26 (citation omitted).

Accordingly, whether Kubota interfered with Gulf Coast's relationship with Herc, and if so, whether such interference was privileged, are questions for the jury to decide.  Accordingly, the Court denies Kubota's motion for summary judgment as to this claim.

## IV.  Conclusion

Accordingly, it is ORDERED AND ADJUDGED that:

(1)    Defendant's Motion for Partial Summary Judgment (Doc. No. 51) is **GRANTED IN PART AND DENIED IN PART:** The motion is granted to the extent that Gulf Coast cannot seek future lost profits in connection with its FDUTPA claim; otherwise, the motion is denied.

(2)    Defendant's Motion to File a Reply Brief (Doc. No. 62) is **DENIED**.

(3)    If  Kubota contends that even past lost profits are not available under FDUTPA, Kubota may raise this issue in a short, supplemental motion for summary judgment on this discrete issue.  This supplemental motion cannot exceed 5 pages and must be filed by ***March 22, 2019.***  Gulf Coast's response thereto must be filed by ***March 29, 2019*** and cannot exceed 5 pages.

---

[6]In its brief (Doc. No. 57, p. 15), Gulf Coast purports to cite to an earlier case (from February 2, 2000) related to KMS Restaurant Corp. v. Wendy's International, Inc., 361 F.3d 1321 (11th Cir. 2004), but instead, Gulf Coast merely copied a summary of that February 2, 2000 case as it was set forth in Burger King Corp. v. Ashland Equities, Inc., 161 F. Supp.2d 1331, 1337–38 (S.D. Fla. 2001).  The February 2, 2000 case is unpublished, and the text of the case cannot be accessed on Westlaw.  Such inappropriate citations are not looked upon favorably by the Court.

(4)     The parties are directed to file their joint pretrial statement by ***April 5, 2019.***

(5)     The parties must file all pretrial motions, including all motions in limine, by ***March 27, 2019***.  Each party may file ***one*** motion in limine containing all of their arguments in a single document not to exceed 25 pages. Responses thereto must be filed by ***April 8, 2019***.

**DONE AND ORDERED** at Tampa, Florida, this 15th day of March, 2019.

SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record